UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>WILLIAM HARVEY YELLIN,<br><br>  Defendant. | Case No.: 3:15-cr-3181-BTM-1<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 128]** |

William Harvey Yellin is an inmate at FCI Terminal Island in the custody of the Bureau of Prisons ("BOP"). Mr. Yellin petitions this Court for compassionate release in light of the COVID-19 pandemic. (ECF No. 128 ("Mot.").) The Court **GRANTS** Mr. Yellin's motion for the reasons that follow.

## I. BACKGROUND

Mr. Yellin is serving a 72-month sentence for distribution and receipt of child pornography at FCI Terminal Island ("Terminal Island"). He self-surrendered to federal custody and began serving his sentence on August 3, 2016. To date, Mr. Yellin has served 1,424 days, which is nearly 47 months and is at least 72 percent of his sentence taking into account good time credit for the first three years. His maximum release date is September 4, 2021 and his projected release date to community confinement is March 4, 2021.

Mr. Yellin moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), describing his "tremendous risk of deadly infection from COVID-19." (Mot., 1:17–20.) The Government opposes the motion. (ECF No. 131 ("Opp.").) The Court held several hearings on the motion. On May 13, 2020, the parties informed the Court that Mr. Yellin had since tested positive for COVID-19. He has not developed severe symptoms.

In the interim period, Mr. Yellin filed two supplemental briefings with his medical records, an expert witness declaration, and information about COVID-19 reinfection. (ECF Nos. 134, 139.) The Government filed a response. (ECF No. 141.) The Court held a hearing on June 15, 2020 and asked the parties to provide evidence regarding Mr. Yellin's ability to comply with supervised release and about the conditions at Terminal Island with respect to the coronavirus pandemic. (ECF No. 147.) Both parties filed supplemental briefings as to these issues. (ECF Nos. 148, 149.) This order follows the Court's final hearing on June 24, 2020.

## II.  LEGAL STANDARD

A district court may modify an existing term of imprisonment under the framework set forth in 18 U.S.C. § 3582(c). The court may only do so upon motion of either the Bureau of Prisons ("BOP") on behalf of a federal inmate or the inmate himself. § 3582(c)(1)(A). This latter avenue — in which the inmate moves on his own accord — is a new addition to the statute, implemented by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

Under § 3582(c)(1)(A), a court may only rule on a motion filed by the inmate after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See United States v. Alam*, ___ F.3d ___, 2020 WL 2845694 (6th Cir. 2020); *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020).

A district court may reduce a previously imposed sentence and grant

compassionate release if "extraordinary and compelling reasons warrant such a reduction," so long as (1) such release is consistent with applicable policy statements of the U.S. Sentencing Commission, (2) the defendant is not a danger to any person or to the community, and (3) the release is consistent with the factors in 18 U.S.C. § 3553(a).  § 3582(c)(1)(A).  The U.S. Sentencing Commission determines what these "extraordinary and compelling reasons" are.  28 U.S.C. § 994(t).  Among them is the medical condition of the defendant.  U.S. S. G. § 1B1.13 cmt. n. 1(A).

## III.  DISCUSSION

### A. Exhaustion

On April 10, 2020, Mr. Yellin initiated the administrative remedy process when his attorney submitted a letter to the Warden of Terminal Island requesting that the BOP file a motion for compassionate release on Mr. Yellin's behalf.  (Mot., Exh. B.)  This request was submitted before Mr. Yellin contracted COVID-19.

At the May 13 hearing, the Government agreed that at least 30 days had lapsed since the Warden's receipt of Mr. Yellin's request pursuant to 18 U.S.C. § 3582(c)(1)(A).  Nevertheless, the Government argued that Mr. Yellin's April 10, 2020 letter was no longer valid as he had tested positive for COVID-19.  Now that his circumstances had changed, the Government argued, Mr. Yellin would now have to start the administrative remedy process again based on these new facts in order to satisfy § 3582(c)(1)(A).

The Court disagrees.  Mr. Yellin's preinfection request properly set forth the same facts germane to his postinfection situation today.  (Mot., Exh. B.)  Mr. Yellin's personal risk factors, the dangers of COVID-19, and the combined effect of these in the prison environment remain unchanged.  He attempted to exhaust his administrative remedies on April 10, 2020.  Mr. Yellin satisfied § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

The 2018 U.S. Sentencing Commission's Guidelines ("Guidelines") permit a

district court to grant a § 3582(c)(1)(A) motion brought by the BOP Director "if, after considering the factors set forth in 18 U.S.C. § 3553(a), . . . the court determines that (1) (A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, . . .; and (3) the reduction is consistent with this policy statement." U.S. S. G. § 1B1.13.  That policy statement permits a sentence reduction in the case of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. n.1(A)(ii).  Though Mr. Yellin brought this motion on his own behalf, the Court will analyze it under this framework.[1]

The Court finds that Mr. Yellin's elderly age and combination of underlying medical conditions qualify as extraordinary and compelling reasons to reduce his sentence that are consistent with the Guidelines' policy statement. *Id.*  Mr. Yellin is 76 years old.  (Mot., 1:20.)  He suffers from a variety of medical conditions including Type-2 diabetes, heart disease, hypertension, and high blood pressure, and experiences low-grade progression of lymphoma, and is in remission for prostate cancer.  (*Id.* at 1:20–22; ECF No. 134, Exhs. J, K, L, O.)  The Centers for Disease Control and Prevention state that people with Type-2 diabetes and serious heart conditions "are at an increased risk of severe illness from COVID-19. "Who Is at Increased Risk for Severe Illness?" *Coronavirus Disease 2019 (COVID-19)*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  People with hypertension or high blood pressure "might be at an increased risk for severe illness from COVID-19. *Id.*

---

[1] The Court's analysis as to the applicability of the 2018 Guidelines is set forth in *United States v. Arreola-Bretado*, 3:19-CR-3410-BTM, ___ F. Supp. 3d ___, 2020 WL 2535049, at *2 (S.D. Cal. May 15, 2020).  This Court applies the same discretion entrusted to the BOP Director and "consider[s] the vast variety of circumstances that may constitute 'extraordinary and compelling.'"  *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa Oct. 8, 2019).

Elderly age and certain medical conditions, such as the ones Mr. Yellin is afflicted with, diminish the body's ability to put forth an adequate immune response to the virus.  *See United States v. Jackson*, No. 18-CR-5477-GPC, (S.D. Cal. June 22, 2020) (describing immunosuppression for patients with Type-2 diabetes in the context of COVID-19); *United States v. Scparta*, ___ F. Supp. 3d ___, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (concluding that hypertension and high blood pressure make an inmate "especially vulnerable to complications from COVID-19").  Studies have shown that the presence of even one of the conditions Mr. Yellin suffers from raises the risk of serious medical consequences or death once COVID-19 is contracted.  (ECF No. 139, Exhs. V, W); *see also United States v. Rodriguez*, ___ F. Supp. 3d ___, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020).  After reviewing Mr. Yellin's medical records, Richard B. Kohler, M.D. concluded that "Mr. Yellin has multiple conditions that increase the chance of death in COVID-19 infections."  (ECF No. 134, Exh. K.)  The Government does not dispute this.  Mr. Yellin's comorbidities amount to extraordinary and compelling reasons to grant compassionate release in light of the deadly coronavirus pandemic in a prison setting.

      The particular conditions at Terminal Island heighten the potential lethality of Mr. Yellin's situation.  Although the BOP has taken substantial measures to combat COVID-19 at Terminal Island, they have not alleviated Mr. Yellin's circumstances. Terminal Island is overcrowded by 133%, which is higher than the federal average. (ECF No. 148, Exh. B, at 5.)  Current inmates are not tested for COVID-19 unless they display symptoms or are linked to a COVID-19 outbreak.  (ECF No. 148, Exh. A ("Prioleau Decl."), ¶ 46.)  Inmates are confined in dormitory-style units with dozens of others, making social distancing impossible.  (ECF No. 148, Exh. B, at 5.)  Both prisoners and staff are given limited personal protective equipment but are not mandated to wear them in all settings.  (Prioleau Decl., ¶¶ 57, 63, p. 28.) Terminal Island has an inmate population of 977, of which 681 have tested positive

for COVID-19 and 10 have died from the virus. *See William v. Ponce*, ___ F. Supp. 3d ___, 2020 WL 3053375, at *3–*6 (C.D. Cal. June 10, 2020) (describing the COVID-19 conditions at Terminal Island).

Prison conditions are necessarily incompatible with containing the spread of this deadly virus and instead contribute to the spread of COVID-19. (Prioleau Decl., ¶ 1; ECF No. 148, Exh. B, at 6 (*William v. Ponce*, ___ F. Supp. 3d ___, 2020 WL 3053375).) The Government has not presented evidence that Mr. Yellin would not likely contract COVID-19 again. *See United States v. McCall*, 2020 WL 2992197, at *7 (M.D. Ala. June 4, 2020) ("The risk is simply too great that the BOP will fail to detect a decline in [the inmate's] condition and . . . fail to provide him the specialized care he needs."). The current conditions in Terminal Island in light of the coronavirus pandemic render compassionate release appropriate for medically impaired individuals like Mr. Yellin who are unable to provide self-care under these circumstances. *United States v. Richardson*, 2020 WL 3402410 (E.D. Cal. June 19, 2020) (granting compassionate release due to the combined effect of the inmate's health and the specific conditions at Terminal Island); *see also United States v. Ramirez*, ___ F. Supp. 3d ___, 2020 WL 2404858, at *5 (D. Mass. May 12, 2020). Mr. Yellin cannot by himself avoid getting reinfected by the virus.

The Government asks this Court to deny the motion because Mr. Yellin (1) has already recovered from COVID-19 and (2) would be a danger to the community. First, while Mr. Yellin's medical record states he recovered from COVID-19, the possibility of reinfection persists. This virus is so new that the scientific community does not yet have answers to whether reinfection is possible. (ECF No. 139, Exhs. Q, S, T, U.) If Mr. Yellin were to be reinfected, his numerous underlying medical conditions could make COVID-19 infection deadly for him. Additionally, the death of Adrian Solarzano is an example of at least one inmate dying from COVID-19 after Terminal Island deemed him recovered from the virus. (ECF No. 142, 1:23–2:9; *id.* at Exh. Y.) The Court does not presume to have more

information than the experts researching this virus.  Without scientific conclusions as to whether reinfection is possible or how long COVID-19 immunity lasts, the Court must err on the side of caution to avoid potentially lethal consequences for Mr. Yellin.  *See McCall*, 2020 WL 2992197, at *6 (granting compassionate release because the movant's underlying medical condition "makes the risk of his reinfection unacceptable"); *United States v. Sholler*, ___ F. Supp. 3d ___, 2020 WL 2512416, at *5 (N.D. Cal. May 15, 2020) (granting compassionate release to an inmate at Terminal Island after addressing risk of reinfection).

Second, the Court finds that any risk Mr. Yellin poses to the community can be addressed by the Court and the U.S. Probation Office by conditions of supervised release.  At the June 15, 2020 hearing, the Government argued that Mr. Yellin remained a danger because he had not yet had sex offender–specific treatment.  The Court agrees that Mr. Yellin must undergo such treatment to reduce his risk to the community.  Unfortunately, Terminal Island is not among the BOP institutions offering the Sex Offender Management Program that Mr. Yellin needs.  This means Mr. Yellin could not begin this program before entering supervised release regardless of whether that is today or as scheduled in 2021.  Additionally, the programs that were previously available at Terminal Island have now been suspended in response to the pandemic. (Prioleau Decl., ¶ 8.)  Despite the lack of available programs at Terminal Island, Mr. Yellin has demonstrated his commitment to rehabilitate himself.  For example, he advocated to improve the existing sex addiction programs at Terminal Island, maintains a relationship with his sponsor, authors and publishes articles on sex addiction recovery, and continues to study his 12-step materials while the programs are shut down. (ECF No. 149, 5:4–8, Exhs. AA, BB, CC.)  Additionally, the Court will impose strict home confinement with electronic monitoring.  With the conditions of release, Mr. Yellin will not be a danger to the community.  In fact, he will be able to better pursue treatment through options that are not available at Terminal Island. (ECF No. 149,

3:22–25.)

Further, release now is consistent with the § 3553(a) factors. The defendant has served approximately 72 percent of his sentence of imprisonment. He may be released to community confinement anyway by the BOP on March 4, 2021. He will serve the remainder of this sentence on strict home confinement. The time he already served is a substantial deterrent. Furthermore, the supervised release conditions are the most efficient way of providing appropriate correctional treatment.

### IV. CONCLUSION

It is hereby ordered that:

1. Mr. Yellin's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED**.
2. Mr. Yellin's prison sentence is reduced to time served effective June 27, 2020.
3. The warden of FCI Terminal Island shall release Mr. Yellin from BOP custody on June 27, 2020.
4. Upon release, Mr. Yellin shall commence his term of supervised release under the conditions set forth in the Amended Judgment, including home confinement until the September 4, 2021.
5. Upon entry of this Order, defense counsel shall contact the Probation Officer to coordinate Mr. Yellin's electronic monitoring and other release conditions.

**IT IS SO ORDERED**.

Dated: June 26, 2020

_____
Honorable Barry Ted Moskowitz
United States District Judge